## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

June 13, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56984-1-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| JAMES LARON ELLIS, | |
| Appellant. | |

MAXA, J. – James Ellis appeals his sentence following a resentencing pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).  Ellis's sentence related to his conviction in 2009 following a guilty plea to second degree murder with a firearm sentencing enhancement.  The conviction arose from an incident in which Ellis shot and killed a person in the course of an attempted robbery.  Ellis was 18 years old at the time of the offense.

At the resentencing hearing, the trial court declined Ellis's request to consider the mitigating qualities of his youth at the time of the offense.  But the court imposed the sentence Ellis's defense counsel recommended.  The trial court did not alter the provisions in the original judgment and sentence imposing several legal financial obligations (LFOs), restitution, and interest on the restitution amount.

Ellis argues that the trial court erred in failing to consider the mitigating qualities of youth when imposing his sentence; that imposition of restitution, interest on restitution, and the

No. 56984-1-II

crime victim penalty assessment (VPA) violated the excessive fines clause in the United States and Washington constitutions; and the trial court improperly imposed certain LFOs.

We hold that (1) the trial court was not required to consider Ellis's youth at resentencing, and any error relating to the trial court's suggestion that it did not have discretion to consider Ellis's youth was harmless because the court imposed the sentence that Ellis requested; (2) imposition of restitution does not violate the excessive fines clause; (3) a recently enacted statutory provision gives the trial court discretion to waive interest on restitution, so on remand the court must consider whether to waive interest based on the statutory factors; (4) a newly enacted statutory provision precludes imposing the VPA on an indigent offender, so on remand the trial court must determine whether Ellis is indigent and reconsider imposition of the VPA based on that determination; and (5) on remand the trial court must strike the DNA collection fee and community custody supervision fees based on newly enacted statutory provisions and reconsider whether to impose the criminal filing fee and attorney fees.

Accordingly, we affirm in part and reverse in part the trial court's sentence, and remand for the trial court to strike the DNA collection fee and community custody supervision fees from the judgment and sentence and to reconsider the imposition of interest on restitution, the VPA, the criminal filing fee, and attorney fees.

FACTS

In March 2008, Ellis shot and killed a person in the course of an attempted robbery. Ellis was 18 years old at the time of his offense. The State charged Ellis with first degree murder, second degree murder, second degree assault, and unlawful possession of a firearm.

Ellis pled guilty to second degree murder. In January 2009, the trial court sentenced him to 240 months in confinement and an additional 60 months for a firearm sentencing

2

enhancement. The sentence was based on an offender score of 4, which included a prior conviction for unlawful possession of a controlled substance. The trial court ordered Ellis to pay the $500 VPA, a $200 criminal filing fee, $1,500 in attorney fees, a $100 DNA collection fee, and community custody supervision fees. The judgment and sentence stated that interest would accrue on unpaid amounts. The trial court also ordered Ellis to pay restitution in the amount of $7,097.32. The restitution order stated, "CVC[1] $7,097.32." Clerk's Papers (CP) at 36.

In July 2021, Ellis was resentenced after one point was removed from his offender score based on *Blake*, which lowered the standard range sentence. At the resentencing hearing, Ellis stated, "I would like to just bring awareness of my youthfulness. . . . And hopefully you can take into consideration that." Report of Proceedings (RP) at 5. The court noted, "That certainly is an issue that the courts have acknowledged is something that should be taken into account in certain circumstances." RP at 6. But the court stated that youthfulness is "a different issue than the one we're talking about today." RP at 6.

The State recommended that Ellis's sentence remain at 300 months because that sentence was within the standard range with his lower offender score. Ellis did not advocate for an exceptional sentence below the standard range. Instead, he asked the trial court to lower his sentence to 289 months, proportional to the new sentencing range.

Before the trial court imposed a sentence, Ellis again asked the trial court to consider his youth. The court responded that this issue "is something that you have the ability to address in a different format than what we are doing today." RP at 9.

The trial court entered an order correcting the 2009 judgment and sentence, changing Ellis's total confinement from 300 months to 289 months, the adjustment Ellis recommended.

---

[1] "CVC" refers to the crime victim compensation fund.

3

No. 56984-1-II

The order stated that all other terms and conditions of the 2009 judgment and sentence would remain in full force. Ellis appeals his sentence.

ANALYSIS

A. SCOPE OF RESENTENCING

Ellis argues that he is entitled to be resentenced because the trial court declined to consider his youth when imposing his sentence. We disagree.[2]

In general, a defendant cannot appeal a standard range sentence. RCW 9.94A.585(1); *In re Pers. Restraint of Marshall*, 10 Wn. App. 2d 626, 635, 455 P.3d 1163 (2019). But this rule does not prohibit defendants from appealing the process by which the trial court imposed its sentence. *Id.*

The trial court was not required to consider Ellis's youth when sentencing him. In *State v. Houston-Sconiers*, the Supreme Court held that the Eighth Amendment requires courts to consider the mitigating qualities of youth when sentencing juvenile offenders. 188 Wn.2d 1, 18, 391 P.3d 409 (2017). But Ellis was 18 at the time of his offense, so *Houston-Sconiers* is inapplicable. *See State v. Nevarez*, 24 Wn. App. 2d 56, 61-62, 519 P.3d 252 (2022), *rev. denied*, 1 Wn.3d 1005 (2023).

Ellis suggests the Supreme Court's decision in *State v. Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021), extended the holding in *Houston-Sconiers* to young adult offenders. In *Monschke*, the Supreme Court in a split decision held that the mandatory imposition of life without parole sentences was unconstitutional for offenders who were 18 to 20 years old as well as for juvenile offenders. 197 Wn.2d at 326, 329. But this court rejected the argument that the

---

[2] Initially, Ellis argues at length that he was entitled to a full resentencing. However, the record reflects that Ellis received a full resentencing hearing.

No. 56984-1-II

lead opinion in *Monschke* supports extending the holding in *Houston-Sconiers* to the sentencing of an 18-year-old, *Nevarez*, 24 Wn. App. 2d at 60-62, and the Supreme Court has denied review of that case. 1 Wn.3d 1005 (2023).

Ellis also argues that the trial court failed to recognize that it had the discretion to consider his youth under *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015). In *O'Dell*, the Supreme Court held that trial courts are allowed, but not obligated, to consider youth as a mitigating factor in favor of an exceptional sentence below the standard range when sentencing adult defendants. *Id.* at 696. Here, Ellis does not argue that the sentencing court failed to recognize its discretion to impose an exceptional sentence. At the sentencing hearing, Ellis argued for a sentence within the standard range, which the trial court granted. Therefore, the court was not required to consider the mitigating qualities of youth under *O'Dell*. *See Nevarez*, 24 Wn. App. 2d at 61-62.

The trial court certainly had the discretion to consider Ellis's youth when considering his sentence within the standard range. But even if the court erred in failing to recognize that it had such discretion, any error was harmless because Ellis received the sentence his defense counsel requested. And Ellis does not assert an ineffective assistance of counsel claim.

We hold that Ellis is not entitled to be resentenced even though the trial court declined to consider Ellis's youth at resentencing.

B.    EXCESSIVE FINES CLAUSE CHALLENGES

Ellis argues that imposition of $7,097.32 in restitution, interest on restitution, and the VPA violates the excessive fines clause. We disagree with regard to restitution, but we remand for the trial court to address restitution interest and the VPA based on newly enacted statutory provisions.

5

No. 56984-1-II

1.    Legal Principles

The Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution prohibit excessive fines. *City of Seattle v. Long*, 198 Wn.2d 136, 158, 493 P.3d 94 (2021). The excessive fines clause limits the state's ability to impose monetary sanctions as punishment for an offense. *Id.* at 159. A monetary sanction violates the excessive fines clause if (1) the sanction is punishment, and (2) the sanction is constitutionally excessive. *Id.* at 163.

A sanction is punishment under the excessive fines clause if it is at least "partially punitive." *Id.* A sanction is constitutionally excessive if it is grossly disproportional to the gravity of the defendant's offense. *Id.* at 166. To determine whether a sanction is disproportional, we consider (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *Id.* at 173. In addition, we also must consider a fifth factor: an offender's ability to pay the fine. *Id.* at 168-73. We review excessive fines challenges de novo. *Id.* at 163.

2.    Failure to Raise Claims in Trial Court

Initially, the State argues that we should decline to consider Ellis' excessive fines claims because they were raised for the first time on appeal. We disagree.

RAP 2.5(a)(3) states that a party is allowed to raise a "manifest error affecting a constitutional right" for the first time on appeal. To determine the applicability of RAP 2.5(a)(3), we inquire whether (1) the error is truly of a constitutional magnitude, and (2) the error is manifest. *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020).

6

No. 56984-1-II

Here, Ellis's excessive fines claims are of constitutional magnitude. And if we were to accept Ellis's arguments, the error would be manifest. Therefore, we will exercise our discretion and address Ellis's excessive fine claims.

3. Restitution

Ellis argues that the trial court violated the excessive fines clause when it imposed $7,097.32 in restitution. We disagree.

a. Restitution Statute

RCW 9.94A.753(5) states, "Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property" absent extraordinary circumstances. Under RCW 9.94A.753(3)(a), restitution "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." In addition, "[t]he amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.753(3)(a). The legislature has found "a compelling state interest[ ] in compensating the victims of crime." RCW 7.68.300.

Former RCW 9.94A.750(4) (2018) states that "the court may not reduce the total amount of restitution ordered because the offender may lack the ability to pay the total amount." And former RCW 9.94A.750(1) states that "[t]he court should take into consideration . . . the offender's present, past, and future ability to pay" only when setting the offender's minimum monthly payment toward restitution.

In 2022, the legislature added a subsection to RCW 9.94A.753(3), effective January 1, 2023. LAWS OF 2022, ch. 260, § 3. The new subsection provides that the trial court "may determine that the offender is not required to pay, or may relieve the offender of the requirement

7

No. 56984-1-II

to pay, full or partial restitution and accrued interest on restitution where the entity to whom restitution is owed is an insurer or state agency, *except for restitution owed to the department of labor and industries under chapter 7.68 RCW*, if the court finds that the offender does not have the current or likely future ability to pay." RCW 9.94A.753(3)(b) (emphasis added).

The restitution order here related to amounts incurred by "CVC," CP at 36, which refers to the crime victim compensation program established in chapter 7.68 RCW. The CVC is a self-insurance program operated by the Department of Labor and Industries, so the trial court here would not be allowed to rescind the restitution order under RCW 9.94A.753(3)(b). However, RCW 7.68.120(5) states, "Any requirement for payment due and owing the department by a convicted person under this chapter may be waived, modified downward or otherwise adjusted by the department in the interest of justice, the well-being of the victim, and the rehabilitation of the individual."

### b. Punishment

The first question is whether the restitution imposed here constitutes "punishment." *Long*, 198 Wn.2d at 163. We conclude that because the specific restitution ordered here was solely compensatory, it was not punishment for purposes of the excessive fines clause.

The Supreme Court has stated in a different context that restitution is both compensatory and punitive. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005). Restitution is compensatory because it is connected to a victim's losses. *Id.* at 280. But the court stated that restitution also is punitive because RCW 9.94A.753(3) allows the trial court to order restitution in an amount that is double a victim's loss, which necessarily exceeds what is necessary to compensate a victim. *Id.*

8

No. 56984-1-II

Division One of this court in *State v. Ramos* relied on *Kinneman* to conclude that restitution is partially punitive for Eighth Amendment purposes. 24 Wn. App. 2d 204, 226, 520 P.3d 65 (2022), *rev. denied*, 200 Wn.2d 1033 (2023). And the court cited *Harris v. Charles*, 151 Wn. App. 929, 940, 214 P.3d 962 (2009), *aff'd*, 171 Wn.2d 455, 256 P.3d 328 (2011), for the proposition that a court must look to the legislature's intent in determining whether restitution is punishment, not to the restitution ordered in a particular case. *Ramos*, 24 Wn. App. at 226.

However, *Kinneman* did not address whether restitution was punitive for purposes of the excessive fines clause. That case involved whether the defendant was entitled to a jury determination of the facts essential to restitution. 155 Wn.2d at 277. And *Harris* involved the definition of "punishment" for purposes of double jeopardy, not for purposes of the excessive fines clause. 151 Wn. App. at 940. Therefore, those cases are not directly controlling. And no case other than *Ramos* has held that a restitution order that involves only compensation of a crime victim constitutes punishment.

We conclude that, unlike Division One stated in *Ramos*, the proper inquiry is whether the restitution ordered *in a particular case* is punitive. Here, the restitution the trial court ordered was solely compensatory, reimbursing the CVC for amounts paid to the victim of Ellis's crime. The court in *Kinneman* stated that restitution could be punitive because the trial court has statutory authority to order restitution in an amount that is double a victim's loss. 155 Wn.2d at 280. But the trial court here did not double the amount needed to compensate CVC. Therefore, under the facts of this case, the restitution the court ordered was not punitive.

We hold that because the restitution imposed on Ellis was not punitive, the excessive fines clause does not apply.

9

No. 56984-1-II

c.   Constitutionally Excessive

Even if the restitution the trial court ordered was punitive, the second question is whether

the restitution imposed here was constitutionally excessive. *Long*, 198 Wn.2d at 163. We

conclude that the restitution imposed here was not excessive.

In *Ramos*, the court concluded that restitution orders based on the victim's actual losses

necessarily are not excessive, even if the offender is unable to pay. 24 Wn. App. 2d at 230. The

court relied on a Ninth Circuit case, *United States v. Dubose*, which held that proportionality is

built into the restitution order when the amount of restitution is tied to the victim's loss, and the

offender's ability to pay does not change the outcome. 146 F.3d 1141, 1145 (9th Cir. 1998).

The court in *Ramos* stated,

> We agree with the reasoning of *Dubose* and hold that a restitution award based on
> a victim's actual losses is inherently proportional to the crime that caused the losses
> because the amount is linked to the culpability of the defendant and the extent of
> harm the defendant caused. A defendant's inability to compensate the victim for
> the losses he caused will not render the restitution amount grossly disproportional.

24 Wn. App. 2d at 230.

We agree with *Ramos* regarding this issue. Here, the amount of restitution was the

amount paid by the crime victim compensation fund, which necessarily related to victim losses.

Further, application of the five-factor test articulated in *Long* supports the conclusion that

the restitution imposed was not constitutionally excessive. First, the nature and extent of the

crime was second degree murder, a significant crime. Second, the murder was related to other

illegal activities – Ellis committed the murder during the course of an attempted burglary with an

illegally possessed firearm. Third, second degree murder carries a maximum sentencing term of

life and a maximum fine of $50,000. Fourth, the trial court ordered restitution in the amount that

10

No. 56984-1-II

the crime victim compensation program paid to compensate the victim's family, which represented only a portion of the actual financial harm that resulted from Ellis's offense.

Regarding the fifth factor, Ellis claims that he is indigent and that he is unable to pay the restitution amount. However, that amount is not so high that it would be inconceivable that Ellis would be able to pay that amount at some point after being released from prison. And RCW 7.68.120(5) allows the Department of Labor and Industries to waive, modify downward, or otherwise adjust the amount of restitution "in the interest of justice, the well-being of the victim, and the rehabilitation of the individual." This means that there is a statutory mechanism through which Ellis's restitution amount may be reduced or eliminated.

We hold based on our de novo review of the specific facts of this case, the restitution imposed on Ellis was not constitutionally excessive. Therefore, the excessive fines clause does not apply.

4. Restitution Interest

Ellis argues that the statutory imposition of interest on the restitution amount violates the excessive fines clause. However, this issue has been resolved by the recent enactment of a new statutory provision regarding restitution interest.

In 2022, the legislature added a subsection to RCW 10.82.090 effective January 1, 2023. LAWS OF 2022, ch. 260, § 12. The new subsection states,

> *The court may elect not to impose interest on any restitution the court orders.* Before determining not to impose interest on restitution, the court shall inquire into and consider the following factors: (a) Whether the offender is indigent as defined in RCW 10.101.010(3) or general rule 34; (b) the offender's available funds, as defined in RCW 10.101.010(2), and other liabilities including child support and other legal financial obligations; (c) whether the offender is homeless; and (d) whether the offender is mentally ill, as defined in RCW 71.24.025. The court shall also consider the victim's input, if any, as it relates to any financial hardship caused to the victim if interest is not imposed. The court may also consider any other information that the court believes, in the interest of justice, relates to not imposing

11

No. 56984-1-II

> interest on restitution. After consideration of these factors, the court may waive the imposition of restitution interest.

RCW 10.82.090(2) (emphasis added).[3]

Although this amendment did not take effect until after Ellis's resentencing, it applies to Ellis because this case is on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018). Therefore, we remand for the trial court to address whether to impose interest on the restitution amount under the factors identified in RCW 10.82.090(2).

5. Imposition of the VPA

Ellis argues that imposition of the VPA violates the excessive fines clause. However, this issue has been resolved by enactment of a new statutory provision regarding the VPA.

In the 2023 session, the legislature passed Engrossed Substitute House Bill 1169. LAWS OF 2023, ch. 449. ESHB 1169 added a subsection to RCW 7.68.035 that prohibits courts from imposing the VPA on indigent defendants as defined in RCW 10.01.160(3). LAWS OF 2023, ch. 449, §1; RCW 7.68.035(4). The amended statute also requires trial courts to waive any VPA imposed prior to the effective date of the amendment if the offender is indigent, on the offender's motion. LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(5)(b). This amendment will take effect on July 1, 2023. LAWS OF 2023, ch. 449.

Although this amendment will take effect after Ellis's resentencing, it applies to Ellis because this case is on direct appeal. *See Ramirez*, 191 Wn.2d at 748-49. However, there has been no finding that Ellis is indigent and the State refuses to concede this issue. Therefore, we

---

[3] The reference to RCW 10.101.010(3) will be changed to RCW 10.01.160(3) effective July 1, 2023. LAWS OF 2023, ch. 449, § 13.

12

No. 56984-1-II

remand for the trial court to determine whether Ellis is indigent under RCW 10.01.160(3) and to reconsider the imposition of the VPA based on that determination.[4]

C.      IMPOSITION OF LFOS

Ellis argues that the trial court erred at resentencing by not removing the following LFOs: the DNA collection fee, community custody supervision fees, the criminal filing fee, $1,500 in attorney fees.

RCW 43.43.7541 currently provides that the DNA collection fee is mandatory unless the offender's DNA previously had been collected as the result of a prior conviction.  However, the legislature has eliminated this provision, effective July 1, 2023.  LAWS OF 2023, ch. 449, § 4.  On remand, the trial court should strike the DNA collection fee.[5]

Effective July 2022, RCW 9.94A.703(2) no longer authorizes the imposition of community custody supervision fees.  LAWS OF 2022, ch. 29, § 7.  Although this amendment took effect after Ellis's resentencing, it applies to cases pending on appeal.  *State v. Wemhoff*, 24 Wn. App. 2d 198, 200-02, 519 P.3d 297 (2022).  Therefore, the community custody supervision fees must be stricken.  *Id.* at 202.

RCW 36.18.020(2)(h) now prohibits imposition of the criminal filing fee on a defendant who is indigent as defined in RCW 10.01.160(3).  However, there has been no finding that Ellis is indigent and the State refuses to concede this issue.  Therefore, we remand for the trial court to determine whether Ellis is indigent and to reconsider the imposition of the criminal filing fee based on that determination.

---

[4] Although the amendment to RCW 7.68.035 has not yet taken effect, it will be in force by the time this appeal is mandated.

[5] Although the amendment to RCW 43.43.7541 has not yet taken effect, it will be in force by the time this appeal is mandated.

13

No. 56984-1-II

Under former RCW 10.01.160(1) (2018), a trial court may require a defendant to pay "costs." Court-appointed attorney fees constitute costs under former RCW 10.01.160(1). *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 155, 381 P.3d 1280 (2016). However, costs cannot be imposed on an indigent defendant. Former RCW 10.01.160(3). Again, there has been no finding that Ellis is indigent, and the State refuses to concede this issue. Therefore, we remand for the trial court to determine whether Ellis is indigent and to reconsider the imposition of attorney fees based on that determination.

Accordingly, we remand for the trial court to strike the imposition of the DNA collection fee and community custody supervision fees. We also remand for the court to reconsider imposition of the criminal filing fee and attorney fees.

### CONCLUSION

We affirm in part and reverse in part the trial court's sentence, and remand for the trial court to strike the DNA collection fee and community custody supervision fees from the judgment and sentence and to reconsider imposition of interest on restitution, the VPA, the criminal filing fee, and attorney fees.

_____
MAXA, J.

We concur:

_____
GLASGOW, C.J.

_____
VELJACIC, J.

14