**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57331-8-II |
| Respondent, | |
| v. | |
| JEREMY DALE SMATHERS, | UNPUBLISHED OPINION |
| Appellant. | |

PRICE — Jeremy D. Smathers appeals his convictions for attempting to elude a pursuing police vehicle and third degree driving with a suspended license. Smathers argues his counsel was ineffective for failing to properly present a motion to suppress evidence that resulted from an allegedly unconstitutional seizure. Smathers also argues we should remand to strike a $500 victim penalty assessment (VPA).

We reject Smathers' ineffective assistance of counsel claim because he fails to show a properly presented motion to suppress would have been granted. We affirm Smathers' convictions but remand to the trial court to strike the VPA from his judgment and sentence.

FACTS

I. BACKGROUND

One night in February 2022, a homeowner called law enforcement to report a man jumping over his fence. Deputy Riordan was on duty and spoke with the homeowner. The homeowner said that after jumping the fence, the man ran back to the roadway and got into a truck. The

homeowner identified the truck as an older Ford Ranger with a loud exhaust but could not identify the truck's color or license plate number. The homeowner called back a few minutes later to report that he thought the same truck was in the area and may have driven up a forest road by his house.

Deputy Riordan approached the forest road and heard a vehicle with a loud exhaust approaching. The deputy was wearing his patrol uniform and was in his marked patrol car. It was dark, so he activated his light bar to illuminate the road with bright white lights, but he did not turn on his red and blue emergency lights. The truck stopped with its engine off. The deputy then got out of his vehicle and approached the truck, which was a Chevrolet S-10, not a Ford Ranger. Because the light bar brightly illuminated the deputy's back, the occupants in the truck could only see a silhouette until he was a few feet from the truck, and they could not tell he was law enforcement.

When Deputy Riordan got closer to the truck, he noticed a male driver and a female passenger. As he looked more closely at the driver, he recognized him as Smathers. The deputy was aware of a warrant for Smathers' arrest and had been looking for him for the last few days. The deputy yelled at Smathers to put his hands up, but Smathers started up the truck and began to drive away. Despite yelling at Smathers, the deputy never identified himself as law enforcement.

Smathers accelerated away at a high speed, causing Deputy Riordan to run back to his patrol car to follow. The deputy activated his red and blue emergency lights and sirens and tried to catch up to the truck, accelerating as quickly as his patrol car allowed. He initially lost sight of the truck, but he eventually saw it again. Soon thereafter, because of the speed involved, Deputy Riordan stopped pursuing the truck, turned off his emergency lights and sirens, and lost sight of the truck again.

Although the deputy ended the pursuit, he suspected that the truck turned down a nearby road, so he continued his search. When the deputy found the truck backing out of a one-way road, he got out of his patrol car and began giving the driver commands. But the deputy quickly saw that a female was then driving; Smathers was nowhere to be found.

Smathers was eventually apprehended, arrested, and charged with attempting to elude a pursuing police vehicle and third degree driving with a suspended or revoked license.

II. MOTION TO SUPPRESS

In August 2022, Smathers filed a motion to "Suppress and Dismiss." Clerk's Papers (CP) at 25. The motion requested the suppression of "all evidence obtained at the time of the stop and subsequently based on unlawful stop or/and seizure and lack of reasonable suspicion to justify a stop." CP at 25. Smathers argued the deputy did not have a reasonable suspicion to stop or seize the truck, pointing out that the truck Smathers drove (Chevrolet S-10) was not the same type of truck the homeowner had reported to police (Ford Ranger). Thus, Smathers argued the stop was unlawful and evidence resulting from the stop should be suppressed and the case dismissed.

The State filed a very short response, arguing the case should not be dismissed, citing *State v. Duffy*, 86 Wn. App. 334, 936 P.2d 444 (1997). In *Duffy*, the Court of Appeals held that the lawfulness of a police stop is irrelevant to a charge of attempting to elude because the crime is focused solely on the defendant's response to the stop. 86 Wn. App. at 340-41. The State's response did not expressly address the issue of suppression of evidence.

The trial court conducted a hearing on the motion. Smathers urged the court to "ignore stare decisis" and not to follow *Duffy* because the case was "20-plus years old." Verbatim Rep. of Proc. (VRP) (Aug. 8, 2022) at 13, 15. Smathers also argued that the stop by Deputy Riordan was

a warrantless seizure and thereafter attempted to distinguish Smathers' interaction with Deputy Riordan from the facts in *Duffy*. The trial court denied the motion, deciding that *Duffy* controlled and "declin[ing] [Smathers'] invitation to ignore the Court of Appeals." VRP (Aug. 8, 2022) at 19.

III. SMATHERS' TRIAL and VPA IMPOSITION

Smathers' case proceeded to a jury trial. Deputy Riordan testified consistent with the facts above. He further explained that he believed his initial interaction with the truck was not a seizure but instead was a "social contact." VRP (Aug. 22, 2022) at 147. But once Deputy Riordan recognized Smathers, he was "going to be effecting an arrest." VRP (Aug. 22, 2022) at 147. The deputy yelled various commands at Smathers, like "get out of the vehicle," "[t]urn the car off," "[p]ut your hands up," and identified Smathers by name while yelling, but never announced he was law enforcement. VRP (Aug. 22, 2022) at 148.

The truck passenger, Lana Keffer, testified in Smathers' defense. Keffer explained that the patrol car's light bar was very bright and Deputy Riordan "nearly T-boned" the truck when she and Smathers were approaching. VRP (Aug. 22, 2022) at 182. Keffer and Smathers did not know that the car with the lights was a law enforcement vehicle, and they were not able to identify the deputy as law enforcement even up to the point when he was yelling. The deputy was scaring Keffer, so she told Smathers to "just go." VRP (Aug. 22, 2022) at 184. After Smathers took off down a curvy road, he wanted to go to a nearby house, but Keffer did not. Keffer said Smathers got out before Deputy Riordan had caught up to the truck, and she took over driving. Keffer testified that during the entire car chase with Deputy Riordan, she was the driver of the truck.

4

The jury found Smathers guilty of both charged offenses—attempting to elude a pursuing police vehicle and third degree driving with a suspended or revoked license. At sentencing, the trial court imposed a $500 VPA under former RCW 7.68.035 (2018).

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL

Smathers argues that he received ineffective assistance of counsel based on his counsel's failure to properly present the relevant issue in his motion to suppress and at the motion's hearing. Smathers essentially contends that his counsel was deficient by not competently dealing with the State's citation to *Duffy* and by being too broad and imprecise with the evidence he sought to have excluded. Had his counsel properly presented his motion, he would have "clearly argue[d] for suppression of the most critical . . . evidence - the deputy's testimony that he saw and recognized Mr. Smathers as the driver of the truck." Appellant's Opening Br. at 24.

According to Smathers, his counsel should have clearly established that, based on the vague information from the homeowner, Deputy Riordan did not have sufficient reasonable suspicion to make an initial stop of the truck. Without reasonable suspicion, the stop was unconstitutional, which would make the deputy's identification of him inadmissible. And because the deputy's identification was the only evidence putting Smathers behind the wheel of the truck, if that evidence was properly suppressed, the State would have had no case against him. This, according to Smathers, constitutes ineffective assistance of counsel.

To show ineffective assistance of counsel, the appellant must show that their attorney's performance was deficient and the deficient performance prejudiced the appellant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *In re Pers. Restraint of*

*Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). To show prejudice, the appellant must demonstrate a reasonable probability that the outcome of the proceeding would have been different if counsel had not performed deficiently. *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021). To show prejudice based on failure to make a motion to suppress, the defendant must show the motion would have been granted if made. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995).

A person is seized within the meaning of article I, section 7 of the state constitution when " 'considering all the circumstances, an individual's freedom of movement is restrained and the individual would not believe he or she is free to leave or decline a request due to an officer's use of force or display of authority.' " *State v. Harrington*, 167 Wn.2d 656, 663, 222 P.3d 92 (2009) (quoting *State v. Rankin*, 151 Wn.2d 689, 695, 92 P.3d 202 (2004)). This is determined using an objective standard, asking "whether a reasonable person in the individual's position would feel he or she was being detained" based on " 'the actions of the law enforcement officer . . . .' " *Id.* (quoting *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998)). The remedy for an unconstitutional seizure is exclusion of the evidence uncovered and obtained therefrom. *State v. Monaghan*, 165 Wn. App. 782, 789, 266 P.3d 222 (2012).

"Whether police have seized a person is a mixed question of law and fact." *Harrington*, 167 Wn.2d at 662. We defer to the trial court for resolutions of differing accounts of the

circumstances surrounding the encounter as factual findings. *Id.* But determinations on whether the facts constitute a seizure is a question of law we review de novo. *Id.*

Here, assuming, without deciding, that defense counsel was deficient in the way he presented his motion to suppress under the first prong of the *Strickland* test, Smathers cannot show the second prong of prejudice—he cannot demonstrate a properly presented motion would have been granted and resulted in suppression of the evidence. Smathers' entire argument depends on establishing that he was unconstitutionally seized by Deputy Riordan at some point. This, he cannot do.

Initially, prior to the moment when the deputy recognized Smathers, no seizure occurred. It is true that Deputy Riordan turned on his light bar, but he did not activate his red and blue emergency lights. While walking toward the truck, the deputy never identified himself and, because of the bright lights, he was merely a faceless silhouette, preventing Keffer and Smathers from realizing that he was law enforcement. Under these circumstances, using the objective standard, a reasonable person would not have believed that they were being seized by law enforcement because there was no ability to know law enforcement was involved. In fact, Keffer's testimony about her subjective belief was consistent with this objective conclusion; she testified she had no idea the deputy was law enforcement and, not only did she feel free to leave, she urged Smathers to drive away (which he did).

Although the situation changed as soon as Deputy Riordan recognized Smathers, there was still no constitutional violation—at that point, the deputy had the authority to stop Smathers rooted in the arrest warrant. Based on the warrant, the deputy had been looking for Smathers the days prior. At the moment he recognized Smathers, the arrest warrant placed any seizure of Smathers

7

(to the extent any seizure occurred) outside the constitutional prohibition on warrantless seizures. Smathers makes no argument otherwise.

In the end, Smathers has not shown an unconstitutional seizure at any point to justify suppressing the evidence resulting from his interactions with Deputy Riordan. A motion to suppress, even if properly presented, would not have been granted. *See McFarland*, 127 Wn.2d at 333-34 (prejudice requires showing a motion to suppress would have been granted). Therefore, because Smathers cannot meet the second prong of the *Strickland* test of prejudice, his ineffective assistance of counsel claim fails.

## II. $500 VPA IMPOSITION

Smathers argues we should remand to strike the $500 VPA because a recent change to the law allows trial courts to retroactively waive VPA impositions. The State has no objection to remand for this purpose.

Until recently, a $500 VPA was imposed on all persons who committed a crime. Former RCW 7.68.035. But in the 2023 session, the legislature changed the law to prohibit the imposition of the VPA on indigent defendants. LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(4). The current version of the statute also allows trial courts to waive any VPA imposed prior to the effective date of the amendment. LAWS OF 2023, ch. 449, § 1; RCW 7.68.035(5)(b). This change took effect on July 1, 2023. LAWS OF 2023, ch. 449.

This change applies to Smathers because his case is still on direct appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, we remand for the trial court to strike the VPA from Smathers' judgment and sentence.

No. 57331-8-II

CONCLUSION

Smathers' ineffective assistance of counsel claim fails. We affirm Smathers' convictions but remand for the trial court to strike the $500 VPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, C.J.

LEE, J.

9